LAW OFFICE OF PATRICK J. MANSHARDT
Patrick J. Manshardt (SBN 178085)
patrickmanshardt@aol.com
One Bunker Hill Building
601 West Fifth Street, Eighth Floor
Los Angeles, CA  90071-2094
Telephone: (213) 880-1543

Attorney for Plaintiff Jamil Carter

**Filed**

APR 2 0 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CV12-01968

| | |
|---|---|
| JAMIL CARTER,<br><br>                  Plaintiff,<br><br>          vs.<br><br>THE CITY OF SAN JOSE; THE SAN JOSE POLICE DEPARTMENT ("SJPD"); MICHAEL SULLIVAN, individually and in his official capacity as Lieutenant, SJPD; and KEITH COTTRELL, individually and in his official capacity as Sergeant, SJPD,<br><br>                  Defendants. | CASE NO.<br><br>**COMPLAINT FOR**<br>• **DAMAGES,**<br>• **INJUNCTIVE RELIEF; AND**<br>• **ATTORNEYS' FEES**<br>**UNDER 42 U.S.C. §§ 1981, 1983, 1985, 2000e; and Cal. Gov't Code § 12940**<br><br>**JURY TRIAL DEMANDED** |

HRL

///

///

///

Plaintiff Jamil Carter (hereinafter "Plaintiff") hereby alleges upon information and belief:

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States for violations of, and seeks relief under, *inter alia*, 42 U.S.C. §§ 1981, 1983, 1985, and 2000e.

2.   Venue is proper in the Northern District of California because the Defendants either reside in the Northern District or is subject to personal jurisdiction there as provided in 28 U.S.C. § 1391(c).  Further, all of the events or omissions set forth in this Complaint occurred in the Northern District. 28 U.S.C. § 1391(a)(2).

## II.   PARTIES

3.   Plaintiff Jamil Carter is a 39-year-old black female and a police officer with the San Jose Police Department ("SJPD").   Plaintiff has worked for the SJPD since June 12, 2002.  Since Plaintiff's hiring in June 2002, the SJPD has not hired another black female.

4.   Plaintiff was an officer assigned at the San Jose Airport from March 20, 2011 to June 25, 2011.

5.   Defendant City of San Jose ("City") was and is a municipal corporation created under article IX of the California Constitution and existing under the laws of the State of California.  The City operates the SJPD, which is a local public safety and crime suppression agency.

6.   Defendant Michael Sullivan was at all relevant times a Lieutenant with the Airport Division of the SJPD.  Defendant Keith Cottrell was at all relevant times a Sergeant with the Airport Division of the SJPD.

## III.   COMMON ALLEGATIONS

7.   On or around February 1, 2011, Plaintiff answered a job announcement from the City of San Jose and applied for an overtime position with the Airport Division of the SJPD.  The job announcement informed applicants that the examination materials for the

2

1  job are located only at the Airport.

2       8.     On February 1, 2011 Plaintiff went to the Airport Division to request to see

3  specific memos related to the Airport which the job announcement stated are located only

4  at the Airport Division.  The purpose of these memos are to provide applicants with the

5  proper study materials to take the examination to work at the Airport.  Plaintiff made

6  contact with Sergeant Keith Cottrell and asked him for a copy of the Airport-specific

7  memos and study guide.  After waiting for 45 minutes, Sgt. Keith Cottrell and Lt.

8  Michael Sullivan told Plaintiff that these memos do not exist.

9       9.     On February 8, 2011, Plaintiff received a message from Sgt. Cottrell

10 requesting that she contact him regarding the airport exam.   Later that day, Plaintiff

11 contacted Sgt. Cottrell, who then attempted to dissuade her from taking the Airport exam.

12 Sgt. Cottrell told her that he was doing her a favor by telling her that she did not want to

13 apply for the Airport job.  Sgt. Cottrell continued to attempt to dissuade Plaintiff from

14 taking the exam, by telling her that everyone who is currently assigned to the

15 Preprocessing Center is opting out of taking the exam.  Plaintiff later learned that this

16 statement was untrue.  Plaintiff informed Sgt. Cottrell that she did not care what other

17 people have decided to do, and still wanted to take the exam.  Sgt. Cottrell then told her

18 that if she took the exam, the Airport would close in three months and after that time, she

19 would be sent back to patrol in June of 2011 and she would be assigned to any days off

20 that the Administration needed filled and that she would probably be assigned to work

21 midnights.  Plaintiff informed Sgt. Cottrell that she still wanted to take the exam.  Sgt.

22 Cottrell again told her that she would be better off not taking the exam.  Sgt. Cottrell

23 again told Plaintiff that he was doing her a favor by telling her this.  Plaintiff informed

24 Sgt. Cottrell that she had all the requirements to take the exam and nothing he said would

25 prevent her from taking the exam.  Sgt. Cottrell asked Plaintiff if she was sure, because

26 he was just trying to help her out, and he was being "straight up" with her.  Plaintiff

27 thanked Sgt. Cottrell, but still requested to take the exam.

28      10.     Eventually Sgt. Cottrell told Plaintiff that he would call her back to schedule

a test time.  Plaintiff then contacted Officer Mark Ligouri, another Airport applicant and

asked him if he was opting out of taking the exam as he was currently assigned to the Preprocessing Center like Plaintiff.  Officer Ligouri told her that he was not opting out of taking the exam and that he already had a scheduled exam time.

11.   On February 8, 2011, Plaintiff received a call from Sgt. Cottrell who informed her that that there was nothing in her Internal Affairs file that would prevent her from applying to the Airport but that he talked to Plaintiff's supervisors who allegedly stated that Plaintiff was "high maintenance" and that she "always ask for end of shift." Plaintiff asked Sgt. Cottrell who said this, and he raised his voice and replied, "I'm not gonna tell you!"  Plaintiff is informed and believes that Sgt. Cottrell's statement was untrue and made out of whole cloth.

12.   Sgt. Cottrell then yelled at Plaintiff, "Your appointment time for the exam is tomorrow at 2pm!" and hung up the phone.

13.   While it was difficult for Plaintiff to ready herself for the exam on less than 24 hours' notice, she was so intimidated by Sgt. Cottrell that she was afraid to tell him that this was not the original date stated in the job announcement and arranged to take the examination on the following day

14.   On February 9, 2011 Plaintiff arrived at the Airport Division for the exam. Sgt. Joaquin Barreto, Sgt. Kimberly Hudson and Lt. Sullivan were on the oral board. Plaintiff was asked five subjective questions, that had almost nothing to do with one's qualifications to work at the Airport.  One question was "What is your SJPD resume?" An unusual question because a copy of Plaintiffs' resume was attached to her application.

15.   Plaintiff was asked why she wanted to work at the Airport and what were the most important type of service calls at the Airport.  At that point, Lt. Sullivan began to raise his voice and told Plaintiff that the "Airport is a specialized unit" and yells, "do you know what that means?" Lt. Sullivan told Plaintiff that "this means that [he is] in charge and that everything stays in house." Lt. Sullivan then asked Plaintiff what special qualifications or skills she had.  Plaintiff attempted to answer his question, but during her response, Lt. Sullivan then proceeded again to yell at her that "the Airport is a Specialized Unit and that everything stays in house.  Do you understand!  You don't go

to the POA if you have a problem!" Lt. Sullivan told Plaintiff that if she has a problem that she should go to his Sergeant or himself.  Sgt. Barreto interrupted Lt. Sullivan during his tirade on told him that he could not tell Plaintiff that she could not complain to her union.

16.     Between each question Lt. Sullivan proceeded to raise his voice and yell at Plaintiff which was completely distracting and made Plaintiff feel as if she were being berated during the interview.   Lt. Sullivan attempted to dissuade Plaintiff from working at the Airport saying that she would be on probation for six months and could be let go for any reason.   Plaintiff told Lt. Sullivan that she still wanted to work at the Airport.  Lt. Sullivan then told Plaintiff that she would be called in to work on her days off.   Plaintiff told Lt. Sullivan that this is not a problem and she would still like to work at the Airport.

17.     The final question I am eventually asked is a fill in the blank question. I am a [_____] candidate because [_____].  Plaintiff answered that: She'd be an excellent candidate because she am fluent in English and Spanish, and communicates well with others.   Plaintiff also stated that she believes that because she is female, at times it could be an advantage as sometimes men women and children may find it easier to talk to a female officer in times of distress and on occasion find that talking to a female officer can be calming in a stressful situation.

18.     Lt. Sullivan then told Plaintiff that she will be assigned to work midnights because of her seniority.  She again told Lt. Sullivan that she still wanted to work at the Airport.  Lt. Sullivan proceeded to tell her that she will receive a phone call on February 10, 2011 at 3:00 p.m.

19.     On February 10 2011 Plaintiff received three messages from Sergeant Kim Hudson requesting that she call her.  Plaintiff returned Sgt. Hudson's calls and she asked Plaintiff how she thought she did on the exam.  Sgt. Hudson then told Plaintiff that she failed the exam.  Plaintiff asked to see the exam results and Sgt. Hudson told her that she needed to ask Lt. Sullivan for the exam results.  Plaintiff was eventually assigned to the Airport.

20.     While Plaintiff was assigned to the Airport she was the only officer that was

ever put through a two week training program, meaning she was assigned to work with another officer in the same car for the first weeks of March 2011. During her time at the Airport, Sgt. Kim Hudson, who was not in Plaintiff's chain of command asked her Sergeant, Eric Phan several times how Plaintiff was performing. In March of 2011, after a briefing Sgt. Hudson told Sgt. Phan to give Plaintiff a "hard time" about her arrival time to the checkpoint.

21.    In May of 2011 Sgt. Phan disclosed to his team that he would be moving to the day shift. This move would leave an opening on the swing shift team and Plaintiff feared Sgt. Phan would no longer be able to protect her from discrimination and harassment as he would no longer be her sergeant and Lt. Sullivan was actively seeking out a swing shift position. Because she feared a resumption of a hostile work environment, Plaintiff requested to be, and was transferred to Patrol in June 2011.

22.    In June of 2011 officers at the Airport were informed that that there would be overtime positions at the Airport. Plaintiff wanted to sign up to work overtime at the Airport with Sgt. Phan as she knew he would treat her fairly.

23.    However as of this date Plaintiff, unlike other persons who are not black females, was not allowed to work overtime at the Airport.

24.    In June of 2011, the second week into shift change Sgt. Davies, who was not in Plaintiff's chain of command questioned her actions on patrol during a routine traffic stop while her sergeant, Jaime Gonzalez, was logged on. Plaintiff informed Sgt. Gonzalez of her concerns and he directed this information to Lt. Millard. Lt Millard confirmed that Sgt. Davies was inappropriately addressing Plaintiff when he should have directed any inquiries to Sgt. Gonzalez if he had any concerns about Plaintiffs' performance.

25.    Plaintiff is informed and believes that in June of 2011 other former Airport officers were sent an email from the Airport Division from Sgt. William Manion directing them that overtime work was available at the Airport and to retrieve their SIDA badges from the Airport Division. Plaintiff was not a recipient of this email.

26.    On July 21, 2011 Plaintiff sent an email to Sgt. Manion stating that she was

interested in recovering her SIDA badge in order to work at the Airport for overtime. A SIDA badge is a card that enables one to work at the Airport, and it opens all doors and access ways to the Airport including gates, etc. Plaintiff informed him of her dates of availability and Wednesdays and left him her mobile phone number.

27.    Later that same day, Plaintiff received an email from Sgt. Manion stating that he did not see her badge in the batch of badges he received to be handed out. Sgt. Manion stated that he would ask Lt. Sullivan about this issue and that he did know who was scheduling the overtime at the Airport.

28.    On July 22, 2011 Plaintiff responded to Sgt. Manion's email asking him if Sgt. Ken Rawson was in charge of the overtime at the Airport. Plaintiff stated that she was interesting in obtaining an overtime position at the Airport and asked who she should contact so that she could get her SIDA badge. Plaintiff never received a response back from this email.

29.    On September 9, 2011 after months of unsuccessful attempts in obtaining her SIDA badge, Plaintiff sent an email to Police Chief Chris Moore, Deputy Chief David Cavallaro, Deputy Chief Phan Ngo, Lt. Sullivan and Sgt. Cottrell stating that she still was unable to recover her SIDA badge so that she could work overtime at the Airport. Plaintiff also informed them that she was unable to make contact with Sgt. Cottrell or Lt. Sullivan to recover her SIDA badge. Plaintiff informed the Command Staff that she feared that Sgt. Cottrell and Lt. Sullivan were retaliating against her. Plaintiff again asked who was in charge of the overtime and stated that she only wanted to have the same opportunities as other officers to be able to work overtime at the Airport.

30.    On September 11, 2011 Sgt. Cottrell sent Plaintiff an email stating that he had completed a search of emails on his City computer from her and found none. Sgt. Cottrell also wrote that Plaintiff "was not issued a card with his private number on it." A sarcastic statement Plaintiff did not understand. Sgt. Cottrell also stated that there were no payjobs at the Airport. Plaintiff is informed and believes that this statement is untrue, and that such jobs were being given to others in the SJPD who were not black females.

31.    Sgt. Cottrell also wrote that the Airport Division had used prior Airport

Complaint for Damages, Injunctive Relief, and Attorneys' Fees

officers and District Robert officers to work overtime at the Airport due to family emergencies. Sgt. Cottrell also wrote that Plaintiff was free to make a formal complaint with her chain of command. Sgt. Cottrell also wrote that if Plaintiff wanted a SIDA badge she would have to go to the badging web site and make an appointment. He also directed Plaintiff to use this same email address to inform him so that he could complete the paperwork.

32.     On September 12, 2011, Plaintiff went to the SIDA badging office and was unable to make an appointment.   She was informed by the staff that Sgt. Cottrell had to complete the necessary paperwork before she could make an appointment and complete the SIDA badge training.

33.     On September 30, 2011 Plaintiff sent an email to Sgt. Cottrell, Lt. Sullivan. Captain Marozick, Deputy Chief Cavallaro, Assistant Chief Phan Ngo, and Chief Chris Moore copying the email requests she had made since July requesting her SIDA badge so that she could work overtime at the Airport.

34.     Twelve minutes later, Sgt. Cottrell sent Plaintiff an email stating that he and Lt. Sullivan had a discussion with the civilian manager of the Airport, Emily Zimmerman, and that they were not issuing any badges to anyone at the Police Department. Sgt. Cottrell again stated that they had not figured out overtime staffing yet. Plaintiff is informed and believes that these statements, which inferred that no one was working overtime at the Airport yet, were also untrue, and that such jobs were being given to others in the SJPD who were not black females.

35.     On October 7, 2011, Plaintiff had a meeting with Deputy Chief Ngo. Plaintiff gave him a list of Officers not assigned to the Airport or District Robert who had worked overtime at the Airport including Officer Minh Phan and Officer Mike Enos. Plaintiff informed him that she just wanted to be afforded the same opportunities as other officers to work overtime at the Airport and support her family.  Plaintiff told Chief Ngo that she feared Sgt. Cottrell and Lt. Sullivan had shown a pattern of intimidating and harassing her because she is a black female.

36.     On October 21, 2011 Plaintiff had another meeting with Deputy Chief Ngo.

He informed Plaintiff that her SIDA badge had been destroyed and that the Airport will not issue another one. Deputy Chief Ngo denied that anyone not assigned to the Airport or District Robert had been or was currently working overtime at the Airport. Plaintiff is informed and believes that this statement is untrue and that such jobs were being given to others in the SJPD who were not black females. Deputy Chief Ngo informed Plaintiff that that overtime may be available for her in January 2012 for her. He then instructed her to address any questions or concerns to Captain Jeff Marozick.

37. On November 7, 2011 Police Officers Association (POA) President Sgt. Robert Lopez and Plaintiff had a meeting with Capt. Marozick who informed Plaintiff that no one not assigned to the Airport or District Robert have been working overtime at the airport. Plaintiff is informed and believes that this statement is untrue and that such jobs were being given to others in the SJPD who were not black females. Capt. Marozick informed Plaintiff that the POA was going to write a list of requirements that officers who desire to work overtime at the Airport in January 2012 must have.

38. Sgt. Lopez objected and informed Capt. Marizick that Sgt. Cottrell is a POA representative, and has previously shown a behavior of discriminating against Plaintiff. Capt. Marozick stated that Sgt. Lopez will be able to review the requirements after they are written.

39. Captain Marozick asked Plaintiff why she left the Airport. Plaintiff informed him that it was because Lt. Sullivan and Sgt. Cottrell were creating a hostile work environment for her and that Sgt. Eric Phan would no longer be able to protect her as he was changing shifts and she was not able to be on his team.

40. In July of 2011, Plaintiff became pregnant. But because of her poor treatment during her earlier pregnancy in 2009 at the hands of the SJPD, she did not disclose her pregnancy until late January of 2012.

41. On January 2012, due to her pregnancy, Plaintiff was transferred from the Patrol to the School Liaison Unit. Approximately a week later, Lt. Tommy Troy, who is a friend of Lt. Sullivan, asked that Plaintiff be transferred back to the Bureau of Field Operations (Patrol). Plaintiff was informed the reason she could no longer work in the

School Liaison Unit was because another female officer, Catherine Unger, who is white, had already been transferred to the building because she was trying to get pregnant and there was no room for both of them.  Plaintiff contacted the Critical Incident Stress Debriefing Unit Sgt. Vanessa Payne about her concerns about being mistreated while pregnant and of her fears of being placed where the sergeant did not want her.  Plaintiff also raised here concerns that staff in the Administration Unit were creating a hostile work environment by saying that she was working patrol while she was pregnant because she was greedy, etc.

42.    After Plaintiff was sent an email from Sgt. Stephen Donohue of the Admin Unit that she would be moved from the School Liaison Unit, she obtained a letter from her doctor stating that she I could return to work with no restrictions.  Plaintiff attempted to give the note to Sgt. Donohue, but he said it would not be accepted as she had already disclosed her pregnancy.  Sgt. Donohue became irritated and questioned Plaintiff about how she would go back to work.  Plaintiff informed him that she would work patrol the same way she had been doing so for the past 7 months.  Sgt. Donohue then yelled at Plaintiff that she was a horrible communicator.  Plaintiff informed Sgt. Donohue that she did not feel comfortable coming to him and feared retaliation from many of the sergeants.

43.    Sgt. Payne then contacted Sgt. Lamont Cusseaux who is assigned to the Police Activities League (PAL) and asked him if he would be willing to have Plaintiff work with him. Sgt. Cusseaux agreed and In February of 2012, Plaintiff went to work there, where she remained until her maternity leave.

## FIRST CLAIM FOR RELIEF

### (Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981)

### (Against all Defendants)

44.    The allegations set forth above in Paragraphs 1-43, inclusive, are incorporated into this cause of action by reference as if set forth in full.

45.    By doing the things and causing the harms alleged in this Complaint, the Defendants discriminated against Plaintiff thereby subjecting her to a deprivation of her rights to the full and equal benefit of the laws and proceedings for the security of property

as is enjoyed by other citizens, giving rise for a claim for relief under 42 U.S.C. § 1981.

46.     The City's actions, as alleged herein, are sufficient to meet the standards for municipal liability as set forth in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 (1978).  That is the racially-discriminatory actions taken by the City towards Plaintiff were pursuant to an established "custom" and "usage" of the City where the City discriminates against black females in specialized assignments.  Further, the alleged conduct was a "deliberate choice" made by Defendants Lt. Sullivan and Sgt. Cottrell who have final policy making authority for the purpose of assigning overtime at the Airport Division.  Further still, the authority to make these choices in Airport Division overtime assignments was delegated to Lt. Sullivan and Sgt. Cottrell or the decision to not permit Plaintiff to work overtime assignments by the City was ratified by final policymakers for the City, including, but not limited to Police Chief Chris Moore.

47.     Plaintiff further alleges that Chief Moore and Deputy Chief Ngo turned a blind eye to Plaintiff's complaints of discrimination which amounted to a failure to protect constitutional rights.  Plaintiff also alleges that the SJPD also failed to adequately train its officers, particularly Lt. Sullivan and Sgt. Cottrell regarding the necessity to avoid race and sex discrimination, and retaliation in making overtime assignments at the SJPD's Airport Division.

48.     As a direct and proximate result of the City's actions Plaintiff suffered serious injury, included but not limited to feeling embarrassed, humiliated, worried, anxious, physically upset, fearful, chagrined, frustrated, angered, aggrieved, saddened, grief, impoverished, demoted, discriminated against, annoyed, anguished, pained, displeasure, exasperated, indignation, outrage, resentment, vexed, afflicted, irritated, hurt, cut, emasculated, cut off at the knees, stung, stiffed, tormented, tortured, wounded, intimidated, and other assorted emotional distress and loss of enjoyment of life.

49.     Plaintiff has also suffered economic damages for lost pay and employment benefits (including front pay and retirement benefits).

50.     The full extent of Plaintiff's damages is not known at this time, but Plaintiff will amend this complaint to set the full nature and extent of such damages once they

have been ascertained with particularity.

51.    The actions taken by the Defendants herein, intentionally discriminated against Plaintiff, and impaired her contractual relationship with the City, including the making, performing, modification and enjoyment of all privileges, terms and conditions of the contractual relationship.

52.    Plaintiff has no plain, speedy, or adequate remedy at law, and for that reason, seeks an order that the Defendants cease discriminating against her on the basis of race and sex and permit her to work overtime assignments at the Airport on the same terms as other employees.

SECOND CLAIM FOR RELIEF

(Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983)

(Against all Defendants)

53.    The allegations set forth above in Paragraphs 1-43 and 45-52 inclusive, are incorporated into this cause of action by reference as if set forth in full.

54.    By taking the actions and causing the harms alleged herein, Defendants acted under color of state law and subjected Plaintiff to a violation of rights, privileges, or immunities secured by the Constitution and laws of the United States, including, but not limited to, the Fourteenth Amendment's right to equal protection, under the laws, without regard to her ethnicity, race, decent or sex.  This deprivation of rights gives rise to a claim for relief under 42 U.S.C. § 1983.

55.    By taking the actions and causing the harms alleged herein, Defendants created a hostile work environment for Plaintiff because of her race and sex.

56.    Unless restrained and enjoined by this Court, the City will continue to violate Plaintiff's rights to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution by denying her a position for which she is well qualified because of her race, ethnicity, decent or sex.

57.    Unless restrained and enjoined by this Court, Defendants will continue to violate Plaintiff's rights to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution by denying her a position for which she is

12

well qualified because of her race, ethnicity, decent or sex.

58.     Plaintiff has no plain, speedy, or adequate remedy at law, and for that reason, seeks an order that the Defendants cease discriminating against her on the basis of race and sex, and permit her to work overtime assignments at the Airport on the same terms as other employees.

**THIRD CLAIM FOR RELIEF**

(Violation of 42 U.S.C. § 1985)

(Against all Defendants)

59.     The allegations set forth above in Paragraphs 1-43, 45-52, and 54-58 inclusive, are incorporated into this cause of action by reference as if set forth in full.

60.     By taking the action and causing the harms alleged herein, Defendants Lt. Sullivan, Sgt. Cottrell, and other unnamed individuals, conspired to deprive, either directly or indirectly, Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws, without regard to her ethnicity, race or decent.  This deprivation of rights gives rise to a claim for relief under 42 U.S.C. § 1985.

**FOURTH CLAIM FOR RELIEF**

(Violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)

(Against Defendant City of San Jose)

61.     The allegations set forth above in Paragraphs 1-43, 45-52, 54-58, and 60 inclusive, are incorporated into this cause of action by reference as if set forth in full.

62.     By doing the things and causing the harms alleged therein, the City discriminated against Plaintiff on the basis of race and sex, and caused a hostile work environment for Plaintiff, giving rise for a claim for relief under Title VII, 42 U.S.C. §§ 2000e *et seq.*

63.     Plaintiff has filed an administrative complaint of race and sex discrimination with the U.S. Equal Employment Opportunity Commission on or around November 9, 2011.  Plaintiff was mailed her right to sue letter on January 23, 2012.

**FIFTH CLAIM FOR RELIEF**

**(Violation of the FEHA, Cal. Govt. Code § 12940)**

**(Against Defendant City and County of San Francisco)**

64.     The allegations set forth above in Paragraphs 1-43, 45-52, 54-58, 60, and 62-63 inclusive, are incorporated into this cause of action by reference as if set forth in full.

65.     By doing the things and causing the harms alleged therein, the City discriminated against Plaintiff on the basis of race and sex giving rise to a claim for relief under the Fair Employment and Housing Act, Cal. Govt. Code § 12940.

66.     Plaintiff has filed an administrative complaint of race and sex discrimination with the California Department of Fair Employment and Housing on or around November 9, 2011.   Plaintiff received her right-to-sue letter from the California Department of Fair Employment and Housing on November 9, 2011.

WHEREFORE, Plaintiffs requests the following relief:

As to the First Claim for Relief:

1.     An order enjoining the City from continuing to discriminate against Plaintiff and permitting her to work overtime assignments at the Airport on the same terms as other employees.

2.     An award of damages for economic losses, back pay, front pay, employment benefits, physical injuries and emotional distress.

4.     An award of punitive damages against Defendants Sullivan and Cottrell.

5.     An award of costs, including attorneys' fees under 42 U.S.C. § 1988, and other relevant provisions of law; and

6.     Such other and further relief as the Court finds just and proper.

As to the Second Claim for Relief:

1.     An order enjoining the City from continuing to discriminate against Plaintiff and permitting her to work overtime assignments at the Airport on the same terms as other employees.

2.     An award of damages for economic losses, back pay, front pay, employment benefits, physical injuries and emotional distress.

4.     An award of punitive damages against Defendants Sullivan and Cottrell.

5.     An award of costs, including attorneys' fees under 42 U.S.C. § 1988, and other relevant provisions of law; and

6.     Such other and further relief as the Court finds just and proper.

<u>As to the Third Claim for Relief:</u>

1.     An order enjoining the City from continuing to discriminate against Plaintiff and permitting her to work overtime assignments at the Airport on the same terms as other employees.

2.     An award of damages for economic losses, back pay, front pay, employment benefits, physical injuries and emotional distress.

4.     An award of punitive damages against Defendants Sullivan and Cottrell.

5.     An award of costs, including attorneys' fees under 42 U.S.C. § 1988, and other relevant provisions of law; and

6.     Such other and further relief as the Court finds just and proper.

<u>As to the Fourth Claim for Relief:</u>

1.     An order enjoining the City from continuing to discriminate against Plaintiff and permitting her to work overtime assignments at the Airport on the same terms as other employees.

2.     An award of damages for economic losses, back pay, front pay, employment benefits, physical injuries and emotional distress.

4.     An award of punitive damages.

5.     An award of costs, including attorneys' fees under 42 U.S.C. § 1988, and other relevant provisions of law; and

6.     Such other and further relief as the Court finds just and proper.

<u>As to the Fifth Claim for Relief:</u>

1.     An order enjoining the City from continuing to discriminate against Plaintiff and permitting her to work overtime assignments at the Airport on the same terms as other employees.

2.     An award of damages for economic losses, back pay, front pay, employment benefits, physical injuries and emotional distress.

1    4.    An award of punitive damages against Defendants Sullivan and Cottrell;

2    5.    An award of costs, including attorneys' fees under California Government

3  Code § 12940, California Code of Civil Procedure § 1021.5, and other relevant

4  provisions of law; and

5    6.    Such other and further relief as the Court finds just and proper.

Dated:    April 20, 2012    LAW OFFICE OF PATRICK J. MANSHARDT

By: _____
Patrick J. Manshardt
Attorney for Plaintiff Jamil Carter

**JURY DEMAND**

Plaintiff hereby demands trial by jury.

By: _____
Patrick J. Manshardt
Attorney for Plaintiff Jamil Carter

Complaint for Damages, Injunctive Relief, and Attorneys' Fees