UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMIL CARTER,<br><br>           Plaintiff,<br><br>   v.<br><br>THE CITY OF SAN JOSE; THE SAN JOSE POLICE DEPARTMENT ("SJPD"); MICHAEL SULLIVAN, individually and in his official capacity as Lieutenant, SJPD; AND KEITH COTTRELL, individually and in his official capacity as Sergeant, SJPD,<br><br>           Defendants. | Case No.  5:12-cv-01968 HRL<br><br>**ORDER DENYING JAMIL CARTER'S MOTION FOR A NEW TRIAL**<br><br>[Re:  Dkt. No. 100] |

Jamil Carter, an officer with the San Jose Police Department (SJPD), sued SJPD and two of its officers for alleged race and gender discrimination.  The case proceeded to a jury trial, and the jury rendered a verdict for the defense on all claims for relief.  The court entered judgment accordingly.[1]  Carter now moves for a new trial pursuant to Fed. R. Civ. P. 59(a), which provides that after a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  She contends that defense counsel engaged in misconduct and that various defense witnesses committed perjury.  Defendants oppose the motion.  Upon consideration of the moving papers, as

---

[1] All parties expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

well as the arguments of counsel, the motion is denied.

**A. Alleged Attorney Misconduct**

"Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting Kehr v. Smith Barney, 736 F.2d 1283, 1286 (9th Cir.1994)). Carter must demonstrate that defense counsel's alleged misconduct "substantially interfered" with her interest. California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1405 (9th Cir. 1995).

Carter has submitted her own declaration in support of her arguments. Many of her statements, however, are hearsay, lack foundation, or are inadmissible opinions and conclusions. Accordingly, defendants' evidentiary objections are sustained. Even if the objectionable statements are considered, however, Carter has not established a need for a new trial based on any attorney misconduct.

**1. Alleged Interference with Witnesses**

Carter contends that the City Attorney's Office told officers, who were also potential witnesses, not to speak with her or her counsel.[2] The officers in question are Mark Ligouri, Mark Stephens, and William Tang. She says that these witnesses were intimated into silence and she was unable to present them at trial to impeach defendants' testimony---specifically, Lt. Sullivan's and Sgt. Cottrell's testimony that Sgt. Yumen, Carter's supervisor, said unfavorable things about her.

With respect to Tang, Stephens, and Ligouri, the record demonstrates that Carter knew about these witnesses and the information they had long before trial. In her initial disclosures, she said that Ligouri had "information that representations made to Plaintiff to dissuade her from taking the Airport examination were untrue"; that Stephens had "information on Plaintiff's job performance at the Airport"; and that Tang had "information on availability of overtime at the

---

[2] Carter does not identify anyone in particular at the City Attorney's Office who allegedly did this.

2

1    Airport." (Neilsen Decl., Ex. D). In the parties' Joint Pretrial Conference Statement, plaintiff

2    identified Ligouri as a potential witness who would "testify that representations made to Plaintiff

3    to dissuade her from taking the Airport examination were untrue." (Id., Ex. C). At Carter's

4    request, defendants say that they had Tang and Ligouri available to testify at trial, but she never

5    called them to the stand. Officer Stephens testified. But, while Carter says that she learned about

6    the alleged witness intimidation/interference one or two weeks before trial, she never asked

7    Stephens about it. Indeed, the first time Carter complained about it was in the instant motion for a

8    new trial. And, she never explains what prejudice she suffered because someone at the City

9    Attorney's Office allegedly told these witnesses not to speak with her or her attorney.

10   Instead, Carter maintains that she was prejudiced because she was somehow prevented

11   from speaking with Sgt. Yumen, who, she says, told her long before trial that he did not say

12   anything negative about her to Sullivan or Cottrell. Yet, Carter did not request Yumen's presence

13   at trial---a decision she says she made, in part, to shorten the length of the trial. While she claims

14   she also decided not to call him to the stand because she was unable to talk with him, she presents

15   no evidence that anyone at the City Attorney's Office told Yumen not to speak to her or her

16   counsel. Nor did Carter depose Yumen in discovery. She claims this is because she did not hear

17   some interview tapes, in which Sullivan and Cottrell reportedly said that Yumen gave them

18   unfavorable information about her, until a few days before the trial was to begin.[3] But, she was

19   present at Sullivan's and Cottrell's February 2013 depositions in which they said that Yumen

20   would not recommend her. All indications are that she simply did not follow up with Yumen,

21   despite her contention that he told her information that directly contradicted their testimony.

22   **2. Alleged Improper Objections during Closing Argument**

23   Carter argues that defense counsel acted improperly when, twice during her closing

24   argument, he objected based on "misconduct." She says that these objections suggested that her

---

[3] Defendants say, and Carter does not deny, that they agreed to produce the investigative file more than a year before trial subject to the agreed-upon terms of a protective order, but Carter's counsel failed to sign the protective order or follow up on the production of the investigative file until the eve of trial.

3

1   counsel did something wrong and unfairly swayed the jury against her.

2         Carter bears the burden of showing prejudice resulting from improper arguments during
3   closing. In evaluating the likelihood of prejudice from the comments, the court should consider
4   "the totality of circumstances, including the nature of the comments, their frequency, their possible
5   relevancy to the real issues before the jury, the manner in which the parties and the court treated
6   the comments, the strength of the case, and the verdict itself." Hemmings, 285 F.3d at 1193
7   (internal quotations and citations omitted). Remedies are available only in "extraordinary cases."
8   Id. at 1194. And, the Ninth Circuit has held that "where 'offending remarks occurred principally
9   during opening statement and closing argument, rather than throughout the course of the trial,' we
10  are less inclined to find the statements pervaded the trial and thus prejudiced the jury."
11  Settlegoode v. Portland Public Schools, 371 F.3d 503, 518 (9th Cir. 2004) (quoting Kehr, 736 F.2d
12  at 1286).

13        Carter has not met her burden in demonstrating that the objections at issue were improper,
14  much less that they rise to the level of misconduct that "sufficiently permeate[s] an entire
15  proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching
16  its verdict." Hemmings, 285 F.3d at 1192. To begin, she misidentifies the issues to which counsel
17  objected. She claims that defense counsel objected when she referenced her administrative
18  complaints to the Department of Fair Employment and Housing. However, defense counsel made
19  no objection of any kind during those portions of Carter's closing argument. (See Neilsen Decl.,
20  Ex. H).

21        Defense counsel did object twice based on "misconduct" during other portions of Carter's
22  closing argument. But those were two isolated objections, and both were sustained. Neither one
23  of the matters objected to had any strong bearing on the issues before the jury. Indeed, one
24  objection concerned the possible state of mind of a witness who did not testify. The other
25  concerned the evaluation of Carter's claimed damages, but the jury never reached the issue of
26  damages at all. Moreover, the court specifically instructed the jury that:

4

> Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.
>
> Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(Dkt. No. 95, Jury Instruction No. 6). Additionally, Carter said nothing about this issue until after the jury returned a defense verdict. "The fact that counsel did not object before the jury was instructed strongly suggests that counsel made a strategic decision to gamble on the verdict and suspected that the comments would not sway the jury." Hemmings, 285 F.3d at 1195.

**B. Alleged Perjury**

Carter claims that several defense witnesses committed perjury. According to her:

- Cottrell lied when he testified that he did not try to dissuade her from applying for a position at the Airport and when he said that he did not yell at her on the phone. Carter maintains that Cottrell did try to discourage her from applying for an Airport position. Additionally, she says that Cottrell's testimony is false because her fiancé, Matthew Bowdish, testified that, although he could not hear the substance of Carter's phone call with Cottrell, he did hear Cottrell yelling.

- Sullivan and Cottrell lied when they testified that Sgt. Yumen told them that he would not recommend Carter, saying that she was "high maintenance" and "quick to grieve, quick to sue." Carter says this testimony is false because she spoke with Yumen, who reportedly told her that he made no such statements.

- The SJPD Airport Division falsely claimed that the Airport, not SJPD, was taking back all outstanding SIDA badges. She says that Cottrell also falsely testified that the Airport determined that there was no operational need for badges. Carter says this is false because Airport Administrator Emily Zimmerman first said that she was the one who determined whether there was an operational need for badges, but later testified that it was SJPD that made that determination.

- Sullivan created a phony order that all badges were to be collected, in order to create a "cover story" for refusing to give her a badge. Carter maintains that this

order was fake because she says that only one badge was destroyed between October 11, 2012 and January 11, 2013.

- Zimmerman lied when she testified that another reason Carter's badge was not returned or reissued was because the Airport wanted to keep tight controls on the number of badges that were issued. Carter says that this testimony is not credible because Zimmerman also testified that, at that time, there were approximately 200 badges outstanding.

"A district court may grant a motion for a new trial based on the insufficiency of the evidence only if the verdict 'is against the "great weight" of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'" Hemmings, 285 F.3d at 1189 (quoting Ace v. Aetna Life Ins. Co., 139 F.3d 1241, 1248 (9th Cir.1998)). "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." Id. at 1372.

Carter has not persuasively demonstrated that any perjury occurred. Instead, her complaint is that the jury did not draw the inferences or conclusions she believes they should have, based on the evidence presented. For the reasons discussed above, Carter has not convincingly demonstrated that she was somehow hampered from presenting all the evidence she needed to prove her claims. The jury was free to believe or disbelieve the parties' respective evidence. This court cannot say with any certainty that the jury could not have reasonably have found the defense witnesses to be more credible than Carter or her witnesses, or that the jury reached a seriously erroneous result.

Based on the foregoing, Carter's motion for a new trial is denied.

**SO ORDERED**.

Dated: June 30, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6

5:12-cv-01968-HRL Notice has been electronically mailed to:

Christian Bayard Nielsen    CAO.Main@sanjoseca.gov

Nkia Desiree Richardson    cao.main@sanjoseca.gov

Thomas Kevin Bourke    TallTom2@aol.com

7